**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| MICHAEL RAMSHAW, MIDAMERICA EQUIPMENT SOLUTIONS, LLC, and GEP AMERICA, LLC,<br><br>    Plaintiffs,<br><br>v.<br><br>BERNHARD EHRET and GLOBAL EHRET PROCESSING TECHNOLOGY,<br><br>    Defendants. | Case No. 4:20-cv-00359 NAB |

**PLAINTIFFS' FOURTH MOTION TO COMPEL**
**DEFENDANTS' DISCOVERY RESPONSES AND FOR SANCTIONS**

Plaintiffs Michael Ramshaw, MidAmerica Equipment Solutions, LLC, and GEP America, LLC ("Plaintiffs"), by and through their attorney, and for their Fourth Motion to Compel Defendants' Discovery Responses and For Sanctions, state as follows:

**I.    SUMMARY**

As indicated by its title, this pleading represents Plaintiffs' fourth separate motion to compel production of discoverable information from Defendants Ehret and GEP-Germany and enforce this Court's orders, with some of Plaintiffs' discovery requests dating back over two years.  Plaintiffs have also filed at least two other pleadings seeking this Court's consideration of Defendants' deficiencies in this regard.  In fact, and as described in considerable detail in the Memorandum and Order dated August 26, 2022 (Doc. 89, "August 2022 Order"), this Court has now entered at least seven (7) orders requiring Defendants to comply with Plaintiffs' discovery requests.  Notwithstanding the clear, strong, language of the Court's most recent orders promising increased sanctions for non-compliance, Defendants continue to ignore this Court's

discovery orders and still fail and refuse to comply with any aspect of the economic sanctions resulting from those violations.  It is patently clear that further warnings and lesser sanctions will not cure Defendants' conduct such that this litigation can proceed in a just, speedy, and orderly fashion.

For the reasons stated below, this Court should follow through with its previous threat to strike Mr. Ehret's Answer, and enter a default judgment against him, because he continues to act willfully, deliberately, and in bad faith with intent to impede the progress of this case, all resulting in prejudice to Plaintiffs, in various respects.

## II.      BACKGROUND AND RELEVANT FACTS

1.       The Court accurately summarized the relevant facts and circumstances applicable here in its August 2022 Order, Memorandum and Order dated October 21, 2022 (Doc. 96, "October 2022 Order") and Order dated October 21, 2022 (Doc. 97, "Third Sanctions Order")(as a group, hereafter referred to as "the Orders for Sanctions").  Plaintiffs hereby incorporate by reference the contents of those Orders for Sanctions as part of their motion, as if stated in full herein.

2.       Defendants' Continued Flaunting of Orders For Economic Sanctions.
Defendants' failure to comply with the orders for Sanctions has continued past the Court's most recent deadline.  The Third Sanctions Order required payment of the $12,223.20 joint and several fee award by November 7, 2022 ("within **fifteen (15) days** of the date of this Order"). As confirmed by Plaintiffs' counsel during the November 9, 2022 Scheduling Conference, and in paragraph 8 of Plaintiff Michael Ramshaw's Affidavit, attached hereto and incorporated herein by reference, not a single dollar of the sanctions amounts has been paid.  The deficiency now totals $36,190.30, in the aggregate (before the assessment of post-judgment interest).  Counsel

for Defendants did not dispute this representation concerning non-payment when presented during the November 9th conference.

       3.    <u>Defendants' Noncompliance with Orders to Compel Discovery Responses.</u>  In the August 2022 Order, this Court required Defendant to "<u>fully</u> respond to the discovery deficiencies" identified by Plaintiffs in the attached Exhibits 1 and 2 to the Third Amended Motion to Compel, by no later than September 15, 2022.  Defendants Ehret and GEP-Germany remain in violation of this Court's orders requiring **<u>full</u>** responses to discovery, as described below:

       A.    <u>Financial Documents.</u>

       1.    On August 31, 2021, Plaintiffs served Defendants with their second requests for production of documents directed to Defendant Global Ehret Processing Technology and second set of interrogatories directed to Defendants Bernhard Ehret and Global Ehret Processing Technology.  See attached Dawn Renwick affidavit ("Renwick Affd."), Para. 4.

       2.    On January 31, 2022, Defendants served their written responses to the second set of discovery requests. *See* Defendants First Supplemental Answers to Plaintiffs' Second Interrogatories and Responses to Plaintiffs' Second Requests for Production of Documents, attached hereto as Exhibits 1 and 2. Renwick Affd. Para. 5.

       3.    In response to Plaintiffs' Second Request for Production No. 1, Defendant GEP-Germany produced a collection of account statements from two financial institutions utilized for its business operations.  *See* March 15, 2022 Transmittal from Joe Jacobson to Pete Woods, attached hereto as Exhibit 3.  Renwick Affd. Para. 6.

4.    Ms. Renwick reviewed the bank account statements for completeness and determined that Defendant GEP-Germany had failed to provide copies of any monthly bank account statements from December 30, 2019 through March 2022. Renwick Affd. Para. 7.

5.    On September 15, 2022, Defendant Ehret served written responses to discovery requests, but did not provide copies of any additional bank statements responsive to Request for Production No. 1.  *See* Defendant Ehret's Responses to Plaintiffs' Second Requests for Production of Documents, attached hereto as Exhibit 4. Renwick Affd. Para. 8.

6.    On September 15, 2022, Defendant Ehret served supplemental responses to Plaintiffs' First Request for Production, originally propounded on August 4, 2020. *See* Exhibit 5, attached hereto.  In that initial request for production, Plaintiffs sought detailed financial information about GEP-Germany in the nature of "financial statements, including balance sheets, income statements, cash flow statements, and statements of shareholders' equity, for the years 2014 to present." First Request for Production No. 6.  GEP-Germany financial statements have not been provided, to date. Renwick Affd. Para. 9.

7.    In connection with Plaintiffs' First Set of Interrogatories served in August, 2020, Defendants supplemented their written answers, on May 31, 2022, and produced eight (8) pages of German documents in response to Plaintiffs' First Interrogatory No. 19 (requesting all financial records in the nature of balance sheets, profit and loss statements, any financial institution's reviews/reconciliations and all application for loans or other financial services).  *See* Defendants' First Supplemental Answers to Plaintiffs' First Interrogatories and GEP Docs Pgs. 61 to 68, attached hereto as Exhibit 6. Renwick Affd. Para. 10.

8.    Exhibit 2 to Plaintiffs' Third Motion to Compel, contained a list of the account statements which remained unproduced by Defendants, notwithstanding the multiple

court orders requiring production. As stated above, Defendant Ehret continues to fail to produce these statements for the period December 2019 to the present.

9.      At the August 25, 2022 hearing before this Court, Plaintiffs presented, and Defendants' Counsel did not dispute, financial statements located on an internet search associated with GEP-Germany.  In his most recent responses, Mr. Ehret, himself, does not dispute that such summary financial information was submitted, to wit:

> 6.      *GEP-Germany's financial statements, including balance sheets, income statements, cash flow statements, and statements of shareholders' equity, for the years 2014 to present.*
>
> *SUPPLEMENTAL RESPONSE: After a diligent search, including inquiries with GEP Germany's former accountants and bookkeeper, Bernhard Ehret was unable to locate any documents responsive to this request. Stating further, per the Memorandum to the Court filed September 14, 2022, Ehret represents that the financial statements located by plaintiffs on the internet that purport to be GEP Germany's financial statements appear to him to the best of his recollection to be the financial statements of GEP Germany as submitted to the German taxing authorities. Ehret further committed that he would not dispute the accuracy of the financial statements found by plaintiffs on the internet and marked as exhibits at the hearing in court.*

*See*, Exhibit 5

Notwithstanding his admissions in this regard, Mr. Ehret would have this Court believe that no one on behalf of him or his company can produce the financial information requested in request for production 6 and repeatedly ordered to be produced by this Court.  Mr. Ehret fails to give any credible explanation for how third parties can be in possession of his financial records, but he and GEP-Germany are not.  Nothing was produced from any GEP-Germany financial officer or by an accountant, for instance, confirming why they might have failed to retain copies

of such information, whether produced to the German government, or otherwise.  His response also fails to address the location of financial statements for more recent periods (2021, 2022).

Further, and practically, the fact that Mr. Ehret "committed that he would not dispute the accuracy of the financial statements found by plaintiffs on the internet" is a transparent attempt to avoid responsibility for production and to place the burden on Plaintiffs to continue chasing information through third parties that should be immediately available to Defendants and thus produced here, per court orders.

10.    Mr. Jacobson, Counsel for Defendants, has suggested on multiple occasions, orally and in writing, that GEP-Germany and Mr. Ehret are in dire economic straits to the point of a potential bankruptcy of the company, not operating normally, incapable of paying either the Court's economic sanctions or even his attorney's fees; that Mr. Ehret is preparing to retire and sell the assets of GEP-Germany to third parties; and that the Court should take such circumstances into consideration relative to the discovery issues here.  However, each of such representations fly in the face of information available on the internet and in the possession of Mr. Ramshaw based, in large part, on his dealings with GEP-Germany, over time, as follows:

a.    Defendant GEP-Germany, through the personal efforts of Bernhard Ehret and his Vice President of Sales and Service in the United States, Jason Weninger, and otherwise, is actively soliciting selling high speed digital finishing equipment in the United States. One of the routes for such sales is attending and participating in trade shows at various locations. Ramshaw affidavit, at 4.

b.    Mr. Weninger, and a GEP engineer from either Poland or Germany named Konrad, per a LinkedIn post by Mr. Weninger, were both present for a trade show in Austin, Texas during April, 2022, referred to as the Inkjet Summit.

6

Ramshaw Affidavit, at 5.  Mr. Ramshaw is personally aware that the costs of operating a booth at such an event range from $12,500 to $15,000, separate from travel and other miscellaneous expenses for company participants, such as the purchase, setup and breakdown of show equipment and presentations.  Thus, the cost of GEP-Germany's trade show participation was at least $20,000.  Mr. Ehret and Mr. Weninger also recently attended a trade show in Las Vegas, as recently as October, 2022.  Ramshaw Affidavit, at 5.

c.      Representatives of GEP- Germany have represented that the company is benefiting from opening a "new, larger manufacturing facility in Europe" with new products in the nature of improved "plow folding units".  *See,* LinkedIn posts from Mr. Weninger dated October 29, 2022, attached to Mr. Ramshaw's affidavit as Exhibit 1.  Page 2 of Exhibit 1 reflects that GEP employees "are programming and testing a new GEP module at (the GEP) new facility!"  *Id.* Mr. Ehret has represented to Mr. Ramshaw in the past that the cost of constructing the manufacturing facilities used in Poland totaled in the millions of dollars and that developing individual products were in the hundreds of thousands of dollars, each. Ramshaw Affidavit at 6.

d.      A recent article featuring Bernhard Ehret (January 2022 in print.de magazine) confirmed that, contrary to the representations of Defendants counsel to this court:

1.)      Mr. Ehret has no intention of retiring anytime soon. (Page 4)

        2.)     GEP employs approximately 50 people, resulting in labor costs in the millions of dollars, although an exact number cannot be determined because Defendants have neither produced any financial statements nor their bank account information since at least December 2019, as requested in discovery here. (Page 5)

        3.)     Mr. Ehret travels a lot himself, by plane to the United States and by car throughout Europe, notwithstanding representations to this Court that he cannot attend depositions in St. Louis. (Page 5)

Ramshaw Affidavit at 7a-c.

    B.    <u>Other Discovery Responses are Incomplete.</u>

Mr. Ehret also takes the position, in numerous responses, that he is, effectively, no longer required to respond to certain requests because his counterclaims have been dismissed and thus certain issues raised in discovery are "moot". However, many of such "moot" issues also relate to Plaintiffs' affirmative claims against Defendants, such as the allegations contained in the Complaint that Mr. Ehret assured Mr. Ramshaw on multiple occasions that he and GEP-Germany would pay his commissions, notwithstanding the company's financial circumstances. Doc. 1, Complaint ¶¶ 40, 41, 49, 50. Thus, the financial condition of GEP-Germany, since 2014, is relevant to Plaintiffs' affirmative claims against both defendants as well as any potential defenses Mr. Ehret may now consider asserting here (presumably, since its answer has been stricken, GEP-Germany may no longer assert any defenses to Plaintiffs' claims, although defendants are still apparently arguing that judgment may not be entered, by default, in light of Mr. Ehret's continued defense of the claims).

Examples from Mr. Ehret's recent supplemental responses to Plaintiffs' First Request For Production (Exhibit 5 hereto) are reflective of this failure, as specifically contained in

supplemental responses to requests numbered 2 (payments to Plaintiffs were "tied to the condition of budget fulfillment"), 5 and 7 (the process, cost of development, and amount of financing for relating to "GEP-Germany's new modules"), 12 (documents suggesting that Mr. Ramshaw caused GEP-Germany to suffer severe losses in the year 2015-2019), 13 (investments in developments and exhibitions prevented the company from gaining any profits), 19 and 20 (documents reflecting that Plaintiffs "owe sums" to Defendants).

In many of these same requests, Defendants suggest that responsive documents "have all been previously produced", without identifying such documents or indicating whether such documents were identified and produced in response to a previous answer to the same request being addressed.  Consequently, these responses remain evasive to the point of not complying with the Court's orders to "fully respond" to all discovery requests.

## III.  <u>ARGUMENT</u>

### A.   <u>The Legal Standards for Striking Pleadings for Failures to Comply with Economic Sanctions and Discovery Orders Suggest Dismissal is Appropriate Here</u>.

The Federal Rules of Civil Procedure expressly authorize sanctions for failure to comply with court's discovery orders, including striking pleadings or dismissing an action in whole or in part. *See* Fed. R. Civ. P. 37(b)(2)(A)(iii), (v).  The Eighth Circuit specifically allows dismissal to be considered as a sanction if there is: (1) an order compelling discovery; (2) a willful violation of that order; and (3) prejudice to the other party.  *Schubert v. Pfizer, Inc.*, 459 Fed. Appx. 568, 572 (8th Cir. 2012) (internal quotations omitted); *St. Louis Produce Market v. Hughes*, 735 F.3d 829, 832–33 (8th Cir. 2013); *Comstock v. UPS Ground Freight, Inc.*, 775 F.3d 990, 992 (8th Cir. 2014) ("[B]efore dismissing a case under Rule 37(b)(2) the court must investigate whether a sanction less extreme than dismissal would suffice, *unless* the party's failure was deliberate or in bad faith.") (emphasis in original) (internal quotation omitted); *Schoffstall v. Henderson,* 223

F.3d 818, 823-824 (8th Cir. 2000)(concluding prejudice existed where a party's misconduct forced other parties to spend a significant amount of time "hounding" the uncooperative party for discovery instead of defending their case and preparing for trial).  Plaintiffs also acknowledge that "[t]he court's discretion is bounded by the requirement of Rule 37(b)(2) that the sanction be 'just.'" *Hairston v. Alert Safety Light Prods., Inc.*, 307 F.3d 717, 719 (8th Cir. 2002).

The range of available Rule 37(A) sanctions for failure to obey a discovery order is broad, including: (i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims; (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence; (iii) striking pleadings in whole or in part; (iv) staying further proceedings until the order is obeyed; (v) dismissing the action or proceeding in whole or in part; (vi) rendering a default judgment against the disobedient party; or (vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination..... (C) Payment of Expenses.

Three cases arising in this Circuit are particularly instructive here: *St. Louis Produce Market v. Hughes*, 735 F.3d 829, 833 (8th Cir. 2013), *United States v. $11,071,188.64 in U.S. Currency*, 825 F.3d 365, 369 (8th Cir. 2016), and *Hanover Ins. Co. v. Harding Enterprises, LLC*, 2018 WL 999981, at *5 (E.D. Mo. Feb. 21, 2018). In *Hughes,* the plaintiff was an employer which filed a state court suit against its employee seeking a declaration that the parties' employment separation agreement was invalid. Employee counterclaimed to enforce the agreement and removed.  The Eighth Circuit found that the district court's action satisfied the governing standards based on the violation of multiple orders compelling discovery from the defendant Hughes. The court then determined that Hughes's several discovery violations were

willful, and struck Hughes's pleadings based on his "deliberate and willful discovery abuses." The court found that Plaintiff Market had "presented substantial evidence that Hughes ha[d] deliberately prevented the discovery of relevant, nonprivileged information throughout this litigation…." The court also found prejudice to the Market, explaining that the discovery violations had caused "considerable delay," and that the missing information "would likely have supported" the Market's theory of the case. For these reasons, the court was found to have acted within its discretion in imposing sanctions under Rule 37, including striking the defendant's pleadings. *Hughes,* 735 F.3d at 833.

In the *$11,071,188.64 in U.S. Currency* case, the district court issued three discovery orders directing the three parties defending the claims to appear for scheduled depositions, through corporate officers. When given one last chance to comply, not all appeared. Before striking these parties' claim and answer, the district court explained that failure to attend the December depositions would be "bad faith conduct." The Eighth Circuit found that the repeated flaunting of the court's unambiguous orders demonstrated bad faith. *Id.* at 369.

Finally, in *Hanover*, the court found that defendants had violated Rule 37(d) by failing to respond to Plaintiff's discovery requests. Despite finding that Defendants' failure to respond to Plaintiff's discovery requests was inexcusable, the Court offered Defendants one opportunity to comply with discovery rules. They were warned that "Failure to fully comply will result in further sanctions, including the entry of default judgment." *Id.* at 5. Plaintiff's Motion and supporting documents revealed that Defendants continued to ignore discovery rules and the Court's clear directives.  Thus, it had become apparent that further warnings and lesser sanctions would not cure Defendants' conduct such that the litigation could proceed in a just, speedy, and orderly fashion, whereupon Magistrate Judge Abbie Crites-Leoni of the Eastern District,

Southeastern Division, struck the defendants' pleading and entered a default judgment in favor of Plaintiff.

**B.     Defendants' Failures to Pay The Courts' Economic Sanctions, Alone, Should Allow for the Striking of Mr. Ehret's Answer and the Entry of a Default Judgment.**

As stated above, this Court has ordered Defendants to fully respond to discovery requests on at least seven (7) occasions.  *See,* Orders contained in docket pleadings numbered 25, 39, 45, 65, 74, 86 and 89. In an attempt to enforce Defendants' discovery obligations, the Court has entered economic sanctions on three separate occasions—on January 11, 2022 (Doc. 65), on May 24, 2022 (Doc. 74) and on October 21, 2022 (Doc. 97).

Defendants, including Mr. Ehret (who has been found jointly and severally liable as to each sanction), have failed to pay a single dollar of the entered sanctions by the deadlines imposed by this Court.  In assessing these sanctions, this Court has found that such an award is the "least severe of all the sanctions authorized by Rule 37(b)."  Doc. 85 at 2, dated July 25, 2022.  Further, the unsupported allegation that "Defendants are in a precarious financial position and believe themselves to be 'judgment proof'" does not give them an excuse for willingly ignoring the Court's orders and otherwise unnecessarily driving up the cost of litigation for Plaintiffs and the Court.  *Id.*  Moreover, in the Third Sanctions Order (Doc. 97), the Court indicated that it "did not strike Mr. Ehret's Answer because his counsel argued that Mr. Ehret is willing to participate in this litigation and comply with Court orders to avoid a default judgment against him." *Id.* at 2-3.  In this regard, the Court confirmed that "the Court's orders awarding sanctions are included in the orders that Mr. Ehret must comply with in order to avoid additional sanctions." *Id.*

The rules and cases cited above make clear that the sanction of dismissing a party's case, whether an affirmative claim or a defense, is a proper remedy when a party repeatedly thumbs

its/his nose at the Court, after repeated warnings.  The first economic sanction was entered over

10 months ago and the amount of that sanction has been known by Mr. Ehret for almost five

months.  Repeated warnings have had no effect.  The "sanctions less extreme than dismissal",

even dismissal of his company's pleadings and his own counterclaims, have had no effect.  This

Court's own words are most instructive, given the circumstances and law described above. In its

Memorandum and Order of August 26, 2022, this Court wrote:

> The Court will reserve ruling on whether to strike Defendant Ehret's Answer.
> Based on defense counsel's representations at the hearing, Mr. Ehret is willing to
> participate in this litigation and comply with Court orders to avoid a default judgment
> against him.  If that is the case, the undersigned will give Mr. Ehret a final opportunity to
> correct course.  **If Mr. Ehret fails to do so, the Court will strike his Answer and enter
> a default judgment against him.**

Doc. 89, at 9 (emphasis added).

And again, in that same order, at 10: "**Failure to fully comply** will result in further

sanctions, including striking of additional pleadings and the entry of default judgment."

(emphasis added).

Nor should Mr. Ehret be heard on a purported defense of lack of capacity to pay.  As

detailed in the facts above, GEP-Germany and Mr. Ehret continue to go about their business as

usual—constructing new product facilities, traveling around the world, presumptively paying his

49 or 50 employees, and paying $15,000 to $20,000 associated with trade shows here in the

United States.  Mr. Ehret's misrepresentations about his business status and capacity to pay, as

relayed through counsel on November 9, 2022, especially in the face of failing/refusing to

provide full financial information through discovery, represent the icing on the cake here.

The time has come for the Court to proceed as requested by Plaintiffs here.

**C.      Mr. Ehret's Discovery Failures Provide a Further Basis for Striking His Answer and the Entry of a Default Judgment Against Him.**

The Court ordered Mr. Ehret to fully respond to the discovery deficiencies in Plaintiffs' Exhibits 1 and 2 (Docs. 79-1 and 79-2), on August 26, 2022. As stated there, Defendant Ehret has known about some of these requests for more than two years. The financial statements and other financial information were first sought in August, 2020, as part of request 6. In his "last opportunity to fully respond to" these requests, the Court reminded Mr. Ehret that his discovery obligations as a party in this case include "a reasonable search for information and documents in his 'possession, custody, or control.'" *See* Fed. R. Civ. P. 34(a)(1).  "(C)ontrol is defined broadly as the ability to obtain upon demand documents in the possession of another. The party to whom the discovery is directed need not have legal ownership or actual physical possession, but rather a 'practical ability' to obtain the documents." *Huggins v. Fed. Express Corp.*, 250 F.R.D. 404, 408 (E.D. Mo. 2008) (internal quotations omitted).  Doc. 89. Memorandum & Order, at 9.

Mr. Ehret, effectively by his own admission, has failed and refused to provide to Plaintiffs information that could only have originated with his company; that is, the information Plaintiffs found on the internet, offered into evidence, and which was subsequently acknowledged by Mr. Ehret as being provided to the German government.  Similarly, Defendants produced certain bank account information for the company, dating back to the 2018-2019 time frame, but have failed and refused to produce the same documents for the period since December 2019.

The other discovery violations, shortcutting answers by describing issues as moot and failing to **specifically** identify the documents which are responsive to other requests referenced

14

above, also represent violations of this Court's order to "fully comply" with Plaintiffs' discovery requests.

In light of all the circumstances here, Defendant Ehret's actions are fairly characterized as willful, deliberate and in bad faith.  Plaintiffs have met their burden of proof on elements 1 and 2 of the *Schubert v. Pfizer, Inc.* and *St. Louis Produce Market v. Hughes* cases.

And it is beyond question that Plaintiffs have been prejudiced by Defendant Ehret's actions.  As the cases cited above make clear, prejudice is shown when a party suffers financial harm by the non-payment of sanctions, but also when discovery failures result in their case being impeded.  As this Court previously made clear (August 26, 2022 Order, page 8), monetary sanctions are insufficient to allow this litigation to proceed in a just, speedy and orderly fashion. Further striking of pleadings, in this case Mr. Ehret's answer and affirmative defenses, and the entry of a default judgment against him, are the only remedies left at the Court's disposal and are appropriate here.

WHEREFORE, Plaintiffs hereby move, for the fourth time, to Compel Defendant Ehret to fully respond to all aspects of this Court's Orders and for an Order further sanctioning both Defendants for their repeated failures to comply with the Federal discovery rules and the Court's previous Orders in this matter, such sanctions including, without limitation, an award to Plaintiffs of their additional costs, including reasonable attorney's fees, and the striking of Defendants Ehret's remaining pleadings; and for such other and further relief as this Court may deem just.

Dated:  November 14, 2022                     HAAR & WOODS, LLP

                                              /s/ Peter C. Woods
                                              Peter C. Woods, #32132MO
                                              1010 Market Street – Suite 1620
                                              St. Louis, Missouri 63101
                                              (314) 241-2224
                                              (314) 241-2227 (facsimile)
                                              petewoods@haar-woods.com
                                              *Attorney for Plaintiffs*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 14th day of November, 2022, a copy of ***Plaintiffs' Fourth Motion to Compel Defendants' Discovery Responses and for Sanctions*** was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon:

Joe D. Jacobson
***Jacobson Press P.C.***
222 South Central Ave., Suite 550
Clayton, Missouri 63105
Jacobson@ArchCityLawyers.com

*Attorney for Defendants*

                                              /s/ Peter C. Woods